OPINION OF THE COURT
 

 Titone, J.
 

 The Criminal Procedure Law safeguards the secrecy of Grand Jury proceedings by carefully circumscribing the categories of persons who may be present during that function. The question we are called upon to decide here is whether a police investigator who will serve as a fact witness at Grand Jury proceedings concerning the sexual abuse of several children may be present during the children’s testimony as a video camera operator under the authority of CPL 190.25 (3). We conclude that the officer’s status as a witness disqualified him from employment as a video operator within the meaning of the statute, and that, accordingly, the indictment should be dismissed.
 

 
 *705
 
 I
 

 Defendant was charged with four counts of sexual abuse and four counts of endangering the welfare of a child. In lieu of giving live Grand Jury testimony, three child witnesses under the age of 12 gave videotaped testimony pursuant to CPL 190.32 to be used at the later Grand Jury proceedings. Police Investigator Mitchell, who had previously questioned the children in connection with his investigation of the case against defendant, operated the video camera during that taping upon the request of respondent Yates County District Attorney. Mitchell later testified for the prosecution before the Grand Jury and again at all other stages of the criminal action.
 

 By order to show cause, defendant sought dismissal of the indictment, contending that the investigating officer was not authorized to be present during the videotaping of the children’s testimony because he was also to testify as a Grand Jury witness. The People countered, and the trial court agreed, that the officer was a videotape operator "employed by the district attorney” (CPL 190.32 [1] [c]) — one of the persons authorized to be present during Grand Jury proceedings under CPL 190.25. Following a jury trial, defendant was convicted of two counts of first degree sexual abuse and three counts of endangering the welfare of a child, and sentenced thereon.
 

 The Appellate Division affirmed the convictions. While holding that the officer’s presence violated CPL 190.25 and 190.32 because the People failed to demonstrate that the officer was technically "employed” by the District Attorney as a video operator, the Court concluded that the officer’s presence did not impair the integrity of the Grand Jury process or create a possibility of prejudice to defendant. A Judge of this Court granted defendant leave to appeal, and we now reverse.
 

 II
 

 The officer’s presence in this case was a product of CPL 190.32 (2), which authorizes the videotaping of Grand Jury testimony of a "child witness.”
 
 [1]
 
 This alternative procedure is designed to "lessen the traumatic impact upon young victims
 
 *706
 
 of sex offenses” by enabling the child to testify in a setting less intimidating than that usually associated with the impressive presence of a large Grand Jury audience (Mem in Support of Assembly Bill A 11502, Senator Martin J. Knorr, Bill Jacket, L 1984, ch 804;
 
 see also,
 
 Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 190.32, at 254). The Legislature’s extension of statutory secrecy requirements and provisions prohibiting attendance by unauthorized persons to the taping process
 
 (see,
 
 CPL 190.25 [3]; 190.32 [5] [c]) indicates that videotaped testimony is to be treated as the functional equivalent of live Grand Jury testimony
 
 (see,
 
 Mem in Support of Assembly Bill A 11502, Senator Martin J. Knorr, Bill Jacket, L 1984, ch 804). Accordingly, the enduring secrecy principles governing the conduct of personal Grand Jury appearances and proceedings apply with equal force to videotaped examinations and drive our analysis in this case.
 

 The Grand Jury has long been heralded as " 'the shield of innocence * * * and as the guard of the liberties of the people against the encroachments of unfounded accusations from any source’ ”
 
 (People v Minet,
 
 296 NY 315, 323). The integrity of the Grand Jury is preserved by ensuring that its actions and deliberations are conducted in such a manner that they are " 'uninfluenced by the presence of those not officially and necessarily connected with it’ ”
 
 (People v Di Falco,
 
 44 NY2d 482, 488, quoting
 
 People v Minet,
 
 296 NY 315, 323,
 
 supra).
 
 Accordingly, secrecy has become "a vital requisite of Grand Jury proceedings”
 
 (Di Falco, supra,
 
 at 488;
 
 Minet, supra,
 
 at 323), and "the law makes every effort to safeguard this secrecy”
 
 (People v Conte,
 
 17 Misc 2d 664, 665).
 

 The recognized purposes of Grand Jury secrecy are several: to protect an innocent accused, to prevent a suspect’s flight and to shield grand jurors from interference by those under investigation
 
 (People v Di Napoli,
 
 27 NY2d 229, 235). Beyond those objectives, and of particular relevance here, secrecy creates a climate designed to encourage prospective witnesses to testify freely and truthfully and to prevent subornation of perjury and witness tampering
 
 (id.).
 

 With those goals in mind, lawmakers have historically placed strict limitations on attendance at Grand Jury proceedings to safeguard the secrecy objectives of that institution
 
 (see,
 
 CPL 190.25 [4] [a]). Thus, CPL 190.25 (3) furnishes a carefully circumscribed list of persons who may be present during Grand Jury proceedings generally and, more specifically, dur
 
 *707
 
 ing the videotaping of a child witness’ testimony
 
 (see also,
 
 CPL 190.32 [5] [c]). The fixed categories of authorized attendants generally include only those who perform some official administrative or prosecutorial function necessary to conduct or record the proceeding
 
 (see, e.g.,
 
 CPL 190.25 [3] [a] [District Attorney]; CPL 190.25 [3] [c] [stenographer]; CPL 190.25 [3] [d] [interpreter]; CPL 190.25 [3] [f]) [a witness’ attorney]). Among those authorized to be present is an "operator”
 
 (see,
 
 CPL 190.25 [3] [g]), defined elsewhere in the statute as "a person employed by the district attorney who operates the video camera to record the examination of a child witness” (CPL 190.32 [1] [c]).
 

 The People in this case contend that the investigating officer was authorized to be present during the children’s Grand Jury testimony because his services were used to operate the video camera. Contrary to the Appellate Division’s assumption, sections 190.25 and 190.32 do not require a showing that the District Attorney formally hired and agreed to pay a person to operate the video camera. Rather, it is sufficient if the individual in question is operating the video camera at the District Attorney’s specific request. Thus, the People are correct in their contention that the absence of a conventional hire agreement did not in itself disqualify Officer Mitchell from serving as an "operator” under CPL 190.25.
 

 We nonetheless conclude that Investigator Mitchell’s presence as a video camera operator was unauthorized because another circumstance disqualified him from serving as an operator — namely, his status as a fact witness in the case. It is by now axiomatic that two witnesses are not authorized to be simultaneously present before the Grand Jury
 
 (People v Minet,
 
 296 NY 315,
 
 supra; People v Wilson,
 
 77 AD2d 713;
 
 People v De Ruggiero,
 
 96 Misc 2d 458;
 
 People v Conte,
 
 17 Misc 2d 664). In the seminal case of
 
 People v Minet
 
 (296 NY 315,
 
 supra),
 
 this Court recognized that the presence of a witness during the testimony of another impaired the purposely secret character of Grand Jury proceedings because a witness might be inclined to give an inaccurate or incomplete account of his or her knowledge of a crime if "there were present a person who was free to publish his testimony”
 
 (id.,
 
 at 324). Indeed, in time-honored language, the
 
 Minet
 
 Court observed that "[a] change in expression, a pressure on the hand or a warning glance * * * might well influence, suppress or alter testimony to the prejudice of the defendant. There may have been prior expressions or conversations between the two witnesses which
 
 *708
 
 the one then giving testimony might well hesitate to repudiate or modify in the presence of the other”
 
 (id.,
 
 at 322).
 

 Certainly, the goal of fostering free and truthful testimony by preserving the confidential nature of Grand Jury proceedings is compromised by the presence of a witness during the testimony of another. Indeed, because a person’s unauthorized presence may affect the accuracy with which another witness testifies, a "primary function” of the Grand Jury, which "is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution” risks impairment
 
 (People v Calbud, Inc.,
 
 49 NY2d 389, 394). Even in the context of a public trial, the exclusion of a witness during the testimony of another concerning "events or facts in dispute” is sanctioned as a device to preserve the truth-seeking function by " 'preventing one prospective witness from being taught by hearing another’s testimony’ ”
 
 (People v Santana,
 
 80 NY2d 92, 100, quoting 6 Wigmore, Evidence § 1838, at 461 [Chadbourn rev 1976];
 
 see also, People v Cooke,
 
 292 NY 185, 190-191). Manifestly, a person whose presence seriously threatens any of the goals of the bedrock secrecy requirement — here the protection of witnesses and fostering of truthful testimony — cannot be authorized to attend the Grand Jury proceedings under the aegis of a statutory provision for which that person may technically qualify.
 

 The presence of Officer Mitchell — a witness — during the child witnesses’ testimony was undeniably prohibited by the secrecy rule. That very same rule also operates as an impediment to his service as a videotape operator
 
 (cf., People v Hyde,
 
 85 AD2d 745, 746). Indeed, were we to hold that Officer Mitchell was qualified as an operator, we would encourage the People to circumvent long-standing principles upon which the integrity of the Grand Jury is founded. Clearly, the limited statutory exception for the presence of an "operator” was created with a singular, ministerial purpose — to facilitate the taking of videotaped testimony of child witnesses — and was not intended to create a giant loophole through which other witnesses could gain access to confidential proceedings and "jeopardize [the] safeguards with which the cumulative wisdom of our legislators, lawyers and judges has surrounded the institution of the grand jury”
 
 (Minet, supra,
 
 at 322).
 

 While we recognize that a careful balancing of defendants’ and victims’ rights was made in enacting the statutory provi
 
 *709
 
 sion permitting substitution of a videotape examination for live presentation of Grand Jury testimony, we are also aware that the potential for irregularities especially inherent in the taping process compels more strict and careful compliance with the fundamental secrecy mandates. By statute, the videotaping may be conducted "anywhere and at any time,” provided that the tape begins with a statement of the date, time and place of the examination and a listing of those present (CPL 190.32 [5] [a]). As recognized in Minet, an exchange between the unauthorized person and the witness is often subtle and undetectable through an inspection of the record (296 NY 315, 322,
 
 supra).
 
 This concern is magnified in the videotape process where those present in the room other than the testifying witness are not visible on the tape. Indeed, a greater possibility exists that unauthorized persons will be present at that unregulated location where the secrecy safeguards normally ensured by the formality and solemnity of Grand Jury proceedings are lacking. The potential for improper influence of a Grand Jury witness is heightened where that witness is a child who may be unusually susceptible to signals — real or perceived — emanating from an on-looker. Accordingly, the courts have a special duty to guard against prejudice and to preserve the confidential nature of the procedures employed when the videotaping process is involved.
 

 Ill
 

 Having concluded that the officer’s presence was unauthorized, our remaining concern is whether "prejudice to the defendant may result” from that defect (CPL 210.35 [5]) — a predicate to dismissal of the indictment as defendant seeks under CPL 210.20 (1) (c). Notably, defendant need not demonstrate actual prejudice under this statutory scheme to prevail
 
 (see, People v Wilkins,
 
 68 NY2d 269, 276).
 

 In determining whether a possibility of prejudice may result from a person’s unauthorized Grand Jury presence, the courts must consider all of the circumstances, including whether that person had an opportunity to interact with the witness, an inclination to influence the other’s testimony
 
 (cf., People v Wilson,
 
 77 AD2d 713,
 
 supra),
 
 or some manifest stake or interest in the outcome of the proceeding
 
 (see, People v Gilbert,
 
 149 Misc 2d 411, 413 [distinguishing cases where unauthorized persons have nonprosecutorial status from cases involving unauthorized prosecutors]). Additionally, where the
 
 *710
 
 unauthorized attendee is a fact witness who hears the testimony of another concerning the substance of the charges against the accused, the possibility of prejudice to the defendant is demonstrated
 
 (cf., People v Conte,
 
 17 Misc 2d 664, 666,
 
 supra
 
 [no evidence that one Grand Jury witness "was present at any time that (the other witness) was sworn or began testifying”]). Significantly, although
 
 Minet
 
 was decided at a time when the statutory scheme required automatic dismissal of an indictment for unauthorized presence — without any showing of prejudice
 
 (see,
 
 former Code Grim Pro § 313 [2])— this Court recognized that the possibility of prejudice was inherent in the simultaneous presence of two fact witnesses (296 NY, at 322,
 
 supra).
 

 IV
 

 Relying on the aforementioned principles, we conclude that the officer’s unauthorized presence during the videotaping of the child witnesses’ testimony constituted a defect in the proceeding to such a degree that the resulting possibility of prejudice to defendant warrants dismissal of the indictment. While we recognize that the danger of prejudice could conceivably have arisen from the officer’s ability to prompt or influence the children during their testimony,
 
 [2]
 
 the claim pressed by defendant throughout these proceedings, and upon which we rest our determination, is that the possibility of prejudice to this defendant was demonstrated because the investigating officer, who played a pivotal role in the prosecution of this criminal action against defendant, had the opportunity to listen to the child witnesses’ testimony and to tailor his testimony to theirs. Contrary to the dissent’s contention, our conclusion that a risk of prejudice resulted is not based solely on "speculative theorizing” (dissenting opn, at 716), but is grounded firmly on the fact that the children’s testimony that was overheard by Officer Mitchell concerned substantive alle
 
 *711
 
 gations of sexual abuse directly pertaining to this defendant’s guilt or innocence
 
 (cf., People v De Ruggiero,
 
 96 Misc 2d 458, 461,
 
 supra
 
 [no possibility of prejudice where two detective-witnesses simultaneously present in Grand Jury room “to expedite the process of playing (eavesdropping) tapes” where one detective’s testimony was limited to identifying male voices on the tape, and the other detective’s testimony concerned only identification of female voices]). The officer’s own recollection and recitation of the events in question could have been innocently clouded by the several versions of the events attested to by the children. Additionally, as a representative of the prosecution in this case, the officer undeniably had an incentive and an opportunity to bolster the children’s testimony by conforming his own to the allegations that he overheard.
 
 [3]
 
 Thus, the potential for prejudice to this defendant was solidly demonstrated, and was not remedied by the fact that Officer Mitchell took the requisite oath of secrecy prior to taping
 
 (see,
 
 CPL 190.32 [5] [c]). That vow required the officer not to disclose the substance of the victims’ videotaped examinations and could not remove the taint caused by the officer’s capacity to reflexively alter his own testimony or influence, however innocently, that of the children.
 

 The dissent contends that an affirmance is warranted because "a conclusive lack of actual prejudice is demonstrable” (dissenting opn, at 713). However, it is precisely because of the problem recognized by the dissent — that ”[n]ot a shred of evidence is discernible or deducible from the record” (dissenting opn, at 714) — that the governing inquiry focuses not on whether a defendant was actually prejudiced, but on whether some conduct during Grand Jury proceedings created the
 
 possibility
 
 of prejudice to a defendant. That a defendant need only demonstrate that a defect in Grand Jury proceedings created a risk of prejudice is not a rule invented by the majority in this case, but one with strong jurisprudential roots
 
 (see, People v Wilkins,
 
 68 NY2d 269, 276,
 
 supra; People v Di Falco,
 
 44 NY2d 482,
 
 supra),
 
 and supported by the plain language of CPL 210.35 (5). Indeed, an actual prejudice test, included in two earlier drafts of that section, was changed in the final draft enacted by the Legislature to read "prejudice to
 
 *712
 
 the defendant may result”
 
 (see,
 
 Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 210.35, at 676).
 

 The People steadfastly maintain that the officer’s presence was comforting to the children, and not prejudicial, because they had developed a relationship with him during the preliminary stages of the investigation. Ironically, however, the People unwittingly identify precisely the hazard which compels the officer’s exclusion — that the established familiarity between the officer and the children created a climate naturally lending itself to the mutual exchange of subtle messages.
 

 Thus, the investigating officer’s operation of the video camera during the children’s Grand Jury testimony was a serious and substantial defect which jeopardized the sacred secrecy principles upon which the Grand Jury’s integrity rests. The possibility of prejudice caused by the simultaneous presence of these witnesses outside of the formal Grand Jury setting warranted dismissal of the indictment under CPL 210.20 (1) (c) and 210.35 (5).
 

 Accordingly, the order of the Appellate Division should be reversed, and the indictment dismissed with leave to the People to re-present if they be so advised.
 

 Bellacosa, J. (dissenting). Judge Smith and I respectfully dissent and vote to affirm the order of the Appellate Division. This Court reverses a unanimous affirmance of the judgment of conviction following a jury trial, for what amounts to a ministerial and utterly technical Grand Jury videotaping irregularity. The speculative theory of reversal is contradicted by the record, especially the live trial testimony of the three child victims which was subject to full cross-examination.
 

 L
 

 The Appellate Division held that the police officer who was directed by the Yates County District Attorney to use video equipment to record the child victims’ testimony
 
 was not an "operator”
 
 within the meaning of CPL 190.32 (195 AD2d 968). Nevertheless, that Court concluded that the multiple-victim, multiple-count conviction should be upheld "because defendant failed to show that there was a possibility of prejudice or that the integrity of the [Grand Jury] proceeding was impaired”
 
 (id.).
 

 Ironically, this Court unanimously concludes the officer
 
 was
 
 
 *713
 

 an "operator”
 
 within the meaning of the statute. This Court nevertheless overturns the conviction. We see no basis for the creation and use of a new per se rule directed at only the Grand Jury phase of this case but effectuating vacatur of the conviction secured, beyond a reasonable doubt before a petit jury after an error-free trial. Instead of the "possibility of prejudice” being wrested from this record, a conclusive lack of actual prejudice is demonstrable.
 

 Everyone might do well to step back from the abstraction of Grand Jury secrecy, for there was no violation of that in this case. Also, a careful comparison of the speculation concerning taint of the victim witnesses as against the record would confirm conclusively that there was none of that either. Concentrating on the record, one finds:
 

 • October 26 and 27, 1990 — The three children, friends of defendant’s children, were sexually assaulted by defendant during a slumber party at defendant’s home.
 

 • October 27, 1990 — The children were picked up from defendant’s home by a mother of one of the girls, and during the car ride home, the children explained what had occurred. Eventually, all parents were informed.
 

 • October 28, 1990 — Two of the children met with investigating Officer Mitchell and gave detailed accounts of defendant’s actions. The third child provided a statement on October 29, 1990.
 

 • Shortly thereafter, the children’s testimony was recorded for use by the Grand Jury, and defendant was indicted on November 26, 1990.
 

 • On September 30, 1991, defendant’s trial commenced. At trial, the People presented the three children, two of the mothers, and Officer Mitchell. Defendant’s counsel had full opportunity to cross-examine each witness.
 

 The principal flaws in the reversal analysis include that the record is barren of any allegation by defense counsel that any of the children’s testimony was tainted or that the officer’s testimony was tainted or that there was any prejudice or possibility of prejudice on this record.
 

 IL
 

 The Legislature has defined an "operator” as "a person
 
 *714
 
 employed by the district attorney who operates the video camera to record the examination of a child witness or a special witness” (CPL 190.32 [1] [c]). The plain meaning of the statutory words ought to control and resolve this case
 
 (see, Matter of Alonzo M. v New York City Dept. of Probation,
 
 72 NY2d 662, 665;
 
 People v Cruz,
 
 48 NY2d 419, 427-428;
 
 see also,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 232). In practically the same breath that the police officer is found to be an authorized video operator under this child witness protection statute, the Court disqualifies him because of what he might have done "reflexively” or with unintentional body language or "looks” to influence the children’s testimony during the videotaping of their testimony for the Grand Jury’s later consideration. At another point of the Court’s analysis, the suggestion emerges that the children’s Grand Jury taped testimony may have affected the officer’s testimony. The conjectural nature of this approach to the case is quite evident.
 

 The sole perceived irregularity rests on this miscast portrayal of the sworn officer and his role in this case. He acted in accordance with the facial authority of the statute by performing a ministerial recording function for his employer, the local District Attorney. As to the children’s testimony, the officer gave no fact or substance-of-the-crime testimony. He recorded their evidence for use and consideration by the Grand Jury and verified the process and technology. That the officer acted for an authorized purpose but "maybe” could have perverted his role into that of acting as a manipulative agent prejudicially affecting the child witnesses is irrelevant to the analysis of this case, because that never occurred here. Also, surmises are not a proper basis upon which cases should be decided and convictions overturned, because they cannot supplant facts and evidence as a basis to upset any validly secured conviction, no less one for gross and grievous sexual assaults against children by a prior felony child sex offender.
 

 The acts resulting in verdicts of guilt in this case constituted two counts of first degree sexual abuse and three counts of endangering the welfare of three young girls, each 10 years of age at the time of the crimes. Not a shred of evidence is discernible or deducible from the record or developed in available cross-examination of the witnesses to support the speculative analysis used to reverse. In establishing rules of law, this Court never acts in the abstract. It applies legal principles to the particular evidence in the record. Since the Court is obligated to do that, it should not be forgotten or
 
 *715
 
 overlooked that the only live testimony of these child victim witnesses was given in full confrontation of the accused, in open court, with full cross-examination opportunities, before the petit jury at trial that convicted defendant. No taint whatsoever was explored, uncovered or hinted at by anyone, including defendant or his counsel. This, it seems to us, clinches the irrefutable rebuttal of the conjectural linchpin on which this reversal rests.
 

 Consideration should also be given to the
 
 ante litem motem
 
 verification of the children’s evidence. They graphically described the events which occurred at their slumber party weekend in October 1990. Their descriptions are recorded in written police investigative statements given just two days after the incidents took place and after parents promptly called the police. From the inception of the investigation through trial, the three girls provided consistent, distinct, cross-corroborative and explicit descriptions of the awful crimes inflicted against them in their host friend’s house by the host child’s father. A review of the trial testimony given one year later punctuates the lack of any possibility or actuality of prejudice to defendant in this case. The trial testimony of the three girls is consistent with their original statements made one year earlier to the police. It was tendered with some insignificant human variations that, frankly, if the Court is going to rely on nonrecord psychological propensities, help to provide even greater cogency to their accuracy and veracity. There is not a hint of taint or scripting of the children’s testimony from the investigating officer’s functional, ministerial video-recording role or of tailoring by the officer based on his earlier videotaping of their testimony for Grand Jury purposes only. Pointedly, at trial, when asked, one child answered that the investigating officer directed her to "just tell the truth”. The theory of a "possibility” that the investigating, video-recording officer might have coached or affected the children into providing false testimony or that he tailored his testimony to theirs disintegrates under the weight of the actual trial evidence in this case.
 

 IIL
 

 On another aspect of the Court’s
 
 analysis
 
 — People
 
 v Minet
 
 (296 NY 315) — we conclude that that case offers no support whatsoever for a reversal. That pre-CPL case presented the question whether a defendant’s indictment should be dis
 
 *716
 
 missed, based on common-law precepts and practices because a District Attorney permitted two witnesses to enter the Grand Jury room together and testify in each other’s presence. That is not this case. The children and the video-recording officer never appeared before the Grand Jury together and the functional equivalent notion has no relevancy in this case.
 

 Moreover, in
 
 Minet,
 
 the Court applied section 313 of the former Code of Criminal Procedure to dismiss an indictment without the need to show prejudice. That Code of Criminal Procedure section was replaced by CPL 210.35, which today requires a demonstration — not speculative theorizing — that an improper procedure affected the integrity of the Grand Jury proceeding creating the possibility of prejudice
 
 (see, People v Di Falco,
 
 44 NY2d 482;
 
 see also, People v Corrigan,
 
 80 NY2d 326, 329;
 
 People v Wilkins,
 
 68 NY2d 269, 276). Thus, the principles governing what should be done in this case do not include a per se outcome or a conjectural psychological conclusion founded on a record devoid of any expert proof foundation whatsoever. Rather, a case specific, fact-weighing evidentiary application is or should be the rule and that is not being done here.
 

 Instead of following the statutory prescription that contains the prejudice component and implementing the Court’s unanimous agreement that the officer was a designated operator within the statute, the majority jumps to a different analysis and turns mere presence of the video-recording officer into a surefire, low threshold "possibility of prejudice” reversal standard. No basis is manifested on the actual record of this case that the integrity of the Grand Jury proceedings was in the least bit impaired or that this defendant was actually or potentially prejudiced in any way before the Grand Jury or before the petit jury rendered its verdict after his error-free fair trial.
 

 IV.
 

 In sum, a statutory procedure enacted as a shield for the protection and assistance of child victim witnesses, and initiated in this case to fulfill that very goal, is converted into a sword. That weapon then cuts down this valid conviction and inflicts a miscarriage of justice against the legitimate interests of the child victims, especially if in 1994, four years after the crimes, now at age 14, they may be returned to the Grand Jury and trial for reprises of their terrible weekend in Octo
 
 *717
 
 her 1990. In place of the Legislature’s statutory protection, the Court substitutes a prophylactic per se rule designed to achieve a version of idealized justice in the abstract and
 
 in futuro.
 
 Regrettably, demonstrable justice,
 
 in praesenti
 
 and in the particular facts of this case, is sacrificed as the means to that end.
 

 Chief Judge Kaye and Judges Simons, Levine and Ciparick concur with Judge Titone; Judge Bellacosa dissents and votes to affirm in a separate opinion in which Judge Smith concurs.
 

 Order reversed, etc.
 

 [1]
 

 . A "child witness” is defined as a person under the age of 12 who is the victim of one of the enumerated abuse or sex crimes and who the People intend to call as a witness in a Grand Jury proceeding
 
 (see,
 
 CPL 190.32 [1] [a]; [2], [5]).
 

 [2]
 

 . The dissent contends that the consistency in the children’s initial statements and trial testimony "punctuates the lack of any possibility or actuality of prejudice” to this defendant (dissenting opn, at 715). This analysis is flawed precisely because the danger associated with the attendance of this law enforcement official is that the children’s awareness that the officer is familiar with their earlier statements may well have deterred those fragile witnesses from modifying their prior versions of the events in question, had they later been inclined to do so. Thus, consistency in the children’s statements is not a reliable basis to refute the conclusion that the possibility of prejudice to this defendant has been demonstrated.
 

 [3]
 

 . Indeed, while testifying during a
 
 Sandoval
 
 and
 
 Huntley
 
 hearing, and again at trial, Officer Mitchell related in his own words the substance of a number of the specific allegations made by the children against defendant, stated that he asked defendant if the allegations were true, and then repeated the substance of defendant’s responses to those allegations.