People v Hardie (2025 NY Slip Op 50674(U))

[*1]

People v Hardie

2025 NY Slip Op 50674(U)

Decided on April 29, 2025

Supreme Court, Queens County

Yavinsky, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 29, 2025
Supreme Court, Queens County

The People of the State of New York

against
Aissia Hardie, Defendant.

Indictment No. 74398/2024

ADA Sean K. Jaime (Queens County District Attorney) for the People
P. Scott Dufault, Esq. (Queens Defenders) for the Defendant

Michael J. Yavinsky, J.

The Defendant, Aissia Hardie, has submitted an omnibus motion, dated April 17, 2025 [FN1]
, seeking: inspection of the Grand Jury minutes and reduction or dismissal of the indictment; suppression of statement evidence; suppression of identification evidence; preclusion of statement evidence; preclusion of identification evidence; disclosure of vicious or immoral acts and a Sandoval hearing; any and all Brady and Rosario material; invalidation of the People's certificate of compliance; and the reservation of rights to make further motion. The People's response, dated April 21, 2025, opposes the relief sought. The Court decides the motion as follows:
The Defendant's Omnibus Motion
The branches of the motion seeking to inspect the Grand Jury minutes and dismiss or reduce the indictment are granted only to the extent that the Court has inspected the minutes of the Grand Jury. "A court reviewing the legal sufficiency of an indictment must view the evidence in the light most favorable to the People and determine whether the evidence, if unexplained and uncontradicted, would be legally sufficient to support a verdict of guilt after trial" (People v Dunn, 223 AD3d 806 [2d Dept 2024], quoting People v Holloway, 210 AD3d 1007 [2d Dept 2022]). "In the context of grand jury proceedings, legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt" (id., quoting Holloway at 1008). "This Court's inquiry is limited to assessing whether the facts, if proven, and the logical inferences flowing therefrom, supply proof of each element of the charged crimes" (id., quoting Holloway at 1008). "The existence of innocent inferences arising from the evidence has no bearing upon the legal sufficiency inquiry" (id., quoting People v Castro, 202 AD3d 815 [2d [*2]Dept 2022]). 
The Court finds that the evidence adduced before the Grand Jury was legally sufficient to support all of the counts of the indictment. The People "maintain broad discretion in presenting their case to the Grand Jury and need not seek evidence favorable to the defendant or present all of their evidence tending to exculpate the accused" (People v Thompson, 22 NY3d 687 [2014]; People v Mitchell, 82 NY2d 509, 515 [1993], citing People v Lancaster, 69 NY2d 20, 25 [1986]).
Moreover, the District Attorney properly instructed the Grand Jury on the relevant law (People v Tunit, 149 AD3d 1110 [2d Dept 2017], citing People v Calbud, Inc., 49 NY2d 389 [1980]). To the extent that the Defendant alleges defects in the presentation of the case to the Grand Jury, the Court finds that the presentation was not defective as a matter of law. The minutes reveal that a quorum of the grand jurors was present during the presentation of evidence and at the time that the District Attorney instructed the Grand Jury on the law. No unauthorized person within the meaning of CPL §190.25 was present at any time during the proceedings (see People v Sayavong, 83 NY2d 702 [1994]). Also, no irregularity that would impair the integrity of the Grand Jury occurred (see People v Adessa, 89 NY2d 677 [1997]; People v Huston, 88 NY2d 400 [1996]). The release of additional Grand Jury minutes beyond what has been turned over by the People pursuant to the discovery provisions of Article 245 of the Criminal Procedure Law is denied since defense counsel has failed to demonstrate any compelling need for such action and the Court is able to determine the motion without assistance (see CPL §210.30[3]). The Court has considered the Defendant's specific arguments with respect to Burglary in the First Degree and Burglary in the Second Degree and finds them to be without merit. 
The branch of the motion seeking to suppress statement evidence is denied. In their response, the People indicate that they did not serve CPL §710.30(1)(a) notice of any statements made by the Defendant to law enforcement and that they do not seek to introduce any such statements on their direct case.
The branch of the motion seeking to suppress identification evidence is denied. The Court notes that the People did not serve CPL §710.30(1)(b) notice of any police-arranged identifications of the Defendant. The Court has reviewed the submissions of the parties and sworn grand jury testimony and is satisfied that the relationship between the Defendant and complainant was not distant or fleeting. Indeed, the complainant was married to the Defendant's niece before she passed away. Any identification of the Defendant made by the complainant was confirmatory (see People v Rodriguez, 79 NY2d 445 [1992]; People v Waring, 183 AD2d 271, 274 [2d Dept 1992][The confirmatory identification exception requires a case-by-case analysis which "rests on the length and quality of prior contacts between the witness and the defendant, but always requires a relationship which is more than fleeting or distant."]).
The branch of the motion seeking preclusion of unnoticed statements made by the Defendant to members of law enforcement is granted. Absent a showing of good cause, the People are precluded from the use of any unnoticed statements on their direct case (People v Porter, 192 AD3d 222 [2d Dept 2020], citing People v O'Doherty, 70 NY2d 479 [1987]).
The branch of the motion seeking to preclude identification testimony is granted. Absent a showing of good cause, the People are precluded from the use of any unnoticed police-arranged identifications on their direct case (People v Nolasco, 70 AD3d 972 [2d Dept 2010], citing People v McMullin, 70 NY2d 855 [1987]). 
The branch of the motion seeking the disclosure of Defendant's prior uncharged criminal, vicious or immoral acts is granted to the extent that the People are directed to adhere to the time-period for disclosure pursuant to CPL §245.20(p). 
The branch of the motion seeking a Sandoval hearing is referred to the trial court (see People v Sandoval, 34 NY2d 371 [1974]; Luck v US, 348 F2d 763 [DC Cir 1965]; People v Ventimiglia, 52 NY2d 350 [1981]; People v Molineux, 168 NY 264 [1901]). 
The branch of the motion seeking all Brady material is granted to the extent that the Court reminds the People of their obligations under Brady v Maryland, 373 US 83 (1963) (see CPL §245.20[1][k]).
The People are directed to make every effort to preserve Rosario material as well as all 911 calls, radio runs, sprint reports, surveillance footage, and any other recordings that are relevant to this case and make them available to the Defendant at the appropriate time as prescribed by CPL §245.10 and CPL §245.20(1)(g) (see People v Rosario, 9 NY2d 286 [1961]; People v Consolazio, 30 NY2d 446 [1976]).
The branch of the motion reserving the right to make further motions is granted to the extent permitted by CPL §255.20. 
The Defendant's Motion to Invalidate the People's Certificate of Compliance
The Defendant has moved to invalidate the People's certificate of compliance (which was served and filed on December 20, 2024) because he argues that there were three categories of discovery which were in dispute at the time the People filed their certificate of compliance: 1) the complainant's Ambulance Care Report (ACR); 2) the complainant's psychiatric treatment records; and 3) the grand jury minutes The Court's staff held a discovery conference with the parties on April 23, 2025. The Court will now address each category in dispute:
1) The Complainant's EMS Ambulance Care Report
The Defendant argues that the People's failure to disclose the complainant's Fire Department of New York (FDNY) EMS ACR should render the People's certificate of compliance invalid. In their response, the People indicate that the complainant's ACR is not in their custody and control and had to be obtained via subpoena. The People indicate that they sent so-ordered subpoenas (signed by this Court) for the complainant's ACR on November 26, 2024 and December 3, 2024. During the discovery conference, the assigned Assistant District Attorney (ADA) indicated that his paralegal called the FDNY's EMS bureau to follow up about the complainant's ACR before the People filed their original certificate of compliance and the paralegal was informed that the subpoena was received, that there was a backlog of ACR requests, and that the ACR would eventually be sent.
2) The Complainant's Psychological Treatment Records
The Defendant argues that the People's failure to disclose any psychological treatment records for the complainant should invalidate the People's certificate of compliance. In response, the People state that they are not in possession of any records of psychological treatment records for the complainant and have not sent a subpoena for said records because they have no reason to believe that said records exist.
3) The Grand Jury Minutes
The Defendant further argues that the People's failure to disclose the grand jury minutes [*3]should render their original certificate of compliance invalid. The People indicate that they disclosed the grand jury minutes for this case to the defense prior to filing their certificate of compliance. During the discovery conference, the ADA viewed his discovery monitor program and confirmed that the minutes were shared. 
CPL §245.20(1) requires the People to disclose to the defendant "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control". The People must disclose this initial automatic discovery within twenty calendar days of the Defendant's arraignment where the defendant is in custody (CPL §245.10[1][a][i]) unless the discoverable materials are "exceptionally voluminous or, despite diligent, good faith efforts, are otherwise not in the actual possession of the prosecution," in which case an extension may be granted pursuant to CPL §245.70 (CPL §245.10[1][b]). Furthermore, pursuant to CPL §245.60, both the People and the Defendant have a continuing duty to disclose "additional material or information which it would have been under a duty to disclose pursuant to any provisions of this article had it known of it at the time of a previous discovery obligation or discovery order".
"[W]hether the People made reasonable efforts to satisfy CPL article 245 is fundamentally case-specific, as with any question of reasonableness, and will turn on the circumstances presented" (People v Bay, 41 NY3d 200 [2023]). "Although the statute nowhere defines 'due diligence,' it is a familiar and flexible standard that requires the People 'to make reasonable efforts' to comply with statutory directives (id. quoting People v Bolden, 81 NY2d 146, 155 [1993]).... Although the relevant factors for assessing due diligence may vary from case to case, the courts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material might have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of missing discovery" (Bay at 212). 
The Court has considered the factors that the Court of Appeals listed in Bay and finds that the People have exercised due diligence in providing discovery for this case. First, considerable efforts have been made by the People to generate the discovery they are obligated to turn over in this and every case. For example, the Queens County District Attorney's Office has established a Discovery Compliance Unit to coordinate with law enforcement agencies in an effort to streamline both interagency communication and the exchange of discoverable information. Additionally, the Queens County District Attorney's Office has also established a Law Enforcement Officer Witness Unit to obtain disciplinary information for their witnesses as well as a Forensic Science Unit to obtain scientific and forensic evidence that may exist in any case. Finally, the Queens County District Attorney's Office has also embedded paralegal discovery liaisons in many of its bureaus, whose duties and responsibilities include interacting with a variety of law enforcement agencies in an effort to oversee discovery compliance and to troubleshoot any outstanding discovery issues. The creation of these additional units and allocation of resources to generally address their discovery obligations under CPL Article 245 support a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case.
Second, in comparing the amount of discovery turned over to the amount of discovery outstanding, it is clear that the People have exercised due diligence. It is not in dispute that the People have turned over voluminous discovery, including approximately 240 files, which [*4]contained more than 1,200 pages of material and attachments including 15 body-worn camera videos, more than 15 sets of DD5s from two different police units, and over 200 pages of Law Enforcement Officer Witness (LEOW) materials. In contrast, the outstanding discovery related to the subject matter of the case at the time the People filed their certificate of compliance consisted of one ACR. It is self-evident that the comparison of the discovery turned over to the outstanding discovery supports a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case.
Third, in analyzing the complexity of this case, all indications provided to this Court are that this is not a complex case. During the discovery conference, the parties agreed that this was not a particularly complex case.
Fourth, it appears to this Court that the only discoverable material that the People had not disclosed at the time they filed their original certificate of compliance was the complainant's ACR. In their certificate of compliance, the People identified that they knew that the ACR existed and that they were making efforts to obtain it (see People v Drayton, 231 AD3d 1057 [2d Dept 2024]). The fact that the People only missed one item supports a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case.
Fifth, the People's explanations for the alleged discovery errors are reasonable. At the time they filed their original certificate of compliance, the People knew that they needed to obtain and disclose the complainant's ACR as part of automatic discovery. The People sent two subpoenas for this item and followed up via phone call. After being informed that there was a backlog at FDNY, the People filed their certificate of compliance. Furthermore, there is no error with respect to the complainant's psychological treatment records. The People are not in possession of any psychological treatment records nor is there any indication that such records are related to the subject matter of the case. During the discovery conference, the ADA represented that his investigation of this case revealed that there is nothing to suggest that the complainant has a mental health treatment history which is why the People have not even sent a subpoena for those records (if they exist). Finally, the People represent that the grand jury minutes were disclosed to the Defendant prior to the filing of the People's certificate of compliance. Under the totality of the circumstances before this Court, the facts presented support a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case.
The final factor which the Court of Appeals delineated in Bay, which is the People's response when they learned of missing discovery, is inapplicable here. There is apparently no discovery which was missing and that the People were unaware of at the time they filed their certificate of compliance. The People had identified the ACR issue prior to filing their certificate of compliance, and they put the Defendant on notice that they were making efforts to obtain the complainant's ACR. This supports a finding of due diligence on the part of the Queens County District Attorney's Office in fulfillment of their discovery obligation in this case.
In total, the People have exercised due diligence and made reasonable efforts to both identify and disclose mandatory discovery prior to filing their certificate of compliance in this case. Accordingly, the Defendant's motion to invalidate the People's certificate of compliance is denied.
This constitutes the decision and order of the Court.
Dated: April 29, 2025
Queens, New York
Michael J. Yavinsky, A.J.S.C.

Footnotes

Footnote 1:The Court notes that the Defendant filed an omnibus motion on or about March 13, 2025. However, this motion was withdrawn by defense counsel and an amended motion was filed on April 17, 2025.