# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**SCOTT DANKS**
**JOHN ANDREW GOODRIDGE**
Danks & Danks
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| WILLIAM R. WALLACE, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 26A01-1101-CR-9 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE GIBSON SUPERIOR COURT
The Honorable Earl G. Penrod, Judge
Cause No. 26D01-1006-FD-100

**January 31, 2012**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant William R. Wallace brings this interlocutory appeal, claiming that the trial court abused its discretion in denying his motion to dismiss. Wallace argues that the dismissal of the Class D felony Voyeurism[1] charge was warranted because the facts, as alleged, cannot constitute voyeurism. Concluding that the alleged facts, if proven to be true, could support a voyeurism conviction, we affirm the trial court's order denying Wallace's motion to dismiss.

## FACTS AND PROCEDURAL HISTORY

Because this is an interlocutory appeal, the facts have not yet been established through a trial. The alleged facts contained in the investigative reports are as follows:

In February of 2009, A.J. was incarcerated in the Gibson County Jail and was represented by an attorney. While she was incarcerated, A.J. received a visit from Wallace, who inquired into whether she needed legal representation. A.J. did not know Wallace before he visited her in jail. Wallace told A.J. that he was visiting her because a mutual acquaintance had informed him that she may need legal representation. A.J. initially told Wallace that she did not need any legal representation, but later talked to Wallace about potentially representing her in divorce proceedings.

A.J. later inquired about what Wallace would charge to represent her in a civil lawsuit. Wallace told A.J. that he would charge $750. Wallace told A.J. that she could pay him $200 then, and "work the other [$550] off when she got out of jail." Appellant's App. p. 19. A.J. contacted a family member who paid Wallace $200 to represent A.J. in the civil matter.

---

[1] Ind. Code § 35-45-4-5(b) (2009).

2

Wallace subsequently informed A.J. that she was scheduled to be released from jail on September 4, 2009. Appellant's App. p. 19.

On or about August 29, 2009, Wallace visited A.J. in the jail and notified her that she was no longer scheduled to be released on September 4, 2009, but that he "had a proposition for her." Appellant's App. p. 20. Wallace suggested that he could ensure that A.J. would be released from jail on September 4, 2009, as previously scheduled, if she would agree to have sexual intercourse with him following her release. A.J. told Wallace that she would have sexual intercourse with him if it "was going to get her home quicker so she could be with her children." Appellant's App. p. 20. Wallace instructed A.J. to contact him upon being released from jail.

A.J. was released from the Gibson County Jail at approximately 6:00 a.m. on September 4, 2009. After visiting the probation department, A.J. contacted Wallace, and the two arranged to meet that afternoon at a park in Ft. Branch. Later that afternoon, A.J. and Wallace met in the park before going to an apartment that belonged to a friend of Wallace's. Upon arriving at the apartment, A.J. became nervous and went into the bathroom before entering the bedroom where she engaged in sexual intercourse with Wallace. A.J. was not aware that Wallace had video recorded their sexual encounter, and did not give her consent for him to do so.

In March of 2010, A.J. contacted police after learning that Wallace had recorded their sexual encounter on September 4, 2009, and had shown the recording to her boyfriend. A.J.'s boyfriend told the police officers that the recording showed Wallace turning on the

3

camera before A.J. entered the bedroom and that it continued to run throughout A.J.'s and Wallace's sexual encounter. A.J. told the investigating officers that she had confronted Wallace about the recording and that he had first denied recording their sexual encounter before assuring her that the recording had been destroyed.

An investigation ensued, which led the investigating officers to obtain a warrant to search both Wallace's home and the apartment in Ft. Branch. During the search, Wallace attempted to hide certain objects, including numerous DVDs and a computer hard drive, from the investigating officers by hiding the items in his pants. Upon searching Wallace's home, investigating officers recovered at least one recording of A.J. engaging in sexual intercourse with Wallace, recordings of Wallace engaging in sexual intercourse with at least one other woman, and DVDs containing child pornography.

On June 16, 2010, the grand jury indicted Wallace on charges of Class D felony obstruction of justice, Class D felony possession of child pornography, Class A misdemeanor patronizing a prostitute, and Class B misdemeanor false informing. On July 2, 2010, Wallace filed a motion to sever the child pornography charge, which was denied by the trial court on October 15, 2010. At Wallace's request, the trial court certified its October 15, 2010 order for interlocutory appeal.

On November 30, 2010, the State charged Wallace, by information, with an additional count of Class D felony voyeurism. On January 7, 2011, Wallace filed a motion to dismiss the voyeurism charge as well as three separate motions to suppress evidence recovered during the search of his home. Following a hearing, the trial court denied Wallace's motions

on February 8, 2011. Again at Wallace's request, the trial court certified its February 8, 2011 order for interlocutory appeal.

On April 1, 2011, this court issued orders accepting jurisdiction over the interlocutory appeals from both the October 15, 2010 and February 8, 2011 orders of the trial court.[2] This appeal follows.

## DISCUSSION AND DECISION

Wallace contends that the trial court abused its discretion in denying his motion to dismiss the Class D voyeurism charge because his alleged actions, if proven to be true, do not constitute voyeurism. We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Delagrange v. State*, 951 N.E.2d 593, 594 (Ind. Ct. App. 2011). In reviewing a trial court's decision for an abuse of discretion, we reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

> As a general rule, when a defendant files a motion to dismiss an information, the facts alleged in the information are to be taken as true. *State v. Bilbrey*, 743 N.E.2d 796, 798 (Ind. Ct. App. 2001). Questions of fact to be decided at trial or facts constituting a defense are not properly raised by a motion to dismiss. *State v. Isaacs*, 794 N.E.2d 1120, 1122 (Ind. Ct. App. 2003). A hearing on a motion to dismiss is not a trial of the defendant on the offense charged. *See id.* (noting that the facts permitted to be raised in a motion to dismiss "typically concern only pre-trial matters").

*Id.* at 594-95.

---

[2] Although Wallace sought and received permission to bring an interlocutory appeal of the denials of his motion to sever and motions to suppress, Wallace has not presented any argument relating to the denial of his motions for severance or suppression in his appellate brief. As such, Wallace has waived his opportunity to obtain interlocutory review of these additional claims. *See generally, Bieghler v. State*, 481 N.E.2d 78, 89 (Ind. 1985) (providing that failure to present a cogent argument relating to a particular issue results in waiver of that issue on appeal).

Indiana Code section 35-45-4-5 provides in relevant part as follows:

(b) A person:
    (1) who knowingly or intentionally:
        (A) peeps; or
        (B) goes upon the land of another with the intent to peep;
        into an occupied dwelling of another person; or
    (2) who knowingly or intentionally peeps into an area where an occupant of the area reasonably can be expected to disrobe, including:
        (A) restrooms;
        (B) baths;
        (C) showers; and
        (D) dressing rooms;
    without the consent of the other person, commits voyeurism, a Class B misdemeanor.
(c) However, the offense under subsection (b) is a Class D felony if:
    (1) it is knowingly or intentionally committed by means of a camera.

The Indiana General Assembly has defined "peep" as "any looking of a clandestine, surreptitious, prying, or secretive nature." Ind. Code § 35-45-4-5(a)(2). "'Camera' means a camera, a video camera, a device that captures a digital image, or any other type of video recording device." Ind. Code § 35-45-4-5(a)(1).

In support of his contention that his alleged actions do not constitute voyeurism Wallace argues that A.J. consented to engaging in the sexual encounter with Wallace, and thus, she consented to disrobing in front of Wallace. Accordingly, Wallace argues that his actions do not constitute voyeurism. Had Wallace not used a camera to record the sexual encounter or had Wallace received A.J.'s consent to record the sexual encounter, this may be true, as consent is the crux of Indiana Code section 35-45-4-5. *See generally, Chiszar v. State*, 936 N.E.2d 816, 823 (Ind. Ct. App. 2010) (providing that consent is the crux of the voyeurism statute), *trans. denied*. Wallace, however, did not do so.

6

With respect to voyeurism, this court has held that it "is the nature of the looking that is at issue." *Id*. The "looking" that is proscribed under the statute is "any looking of a clandestine, surreptitious, prying, or secretive nature." Ind. Code § 35-45-4-5(a)(2). There can be no reasonable purpose for that kind of looking since, by definition, it is without the other person's knowledge, and, therefore, it is without the other person's consent. *Chiszar*, 936 N.E.2d at 823. To look at someone in a clandestine or secret manner is to hide that looking from the other person, and it is that act that is proscribed by the statute. *Id*. This court has noted that while those participating in sexual encounters may expect that they will see one another disrobing, and, under most circumstances, participants in such relationships impliedly consent to being seen without clothes on, "that is not to say that 'peeping' is categorically permissible in such relationship settings." *Id*.

In *Chiszar*, the evidence demonstrated that the defendant knew that he did not have the victim's consent to videotape her naked or engaging in sexual intercourse with him. *Id*. at 824. While the victim was sleeping, the defendant videotaped himself taking the victim's clothes off, and he initiated sexual intercourse with her. *Id*. The victim woke up at that point and realized that the defendant was videotaping her. *Id*. The victim was upset, and when she tried to grab the video camera, the defendant took it and tried to prevent her from getting it. *Id*. When the victim demanded that the defendant give her the video camera, he denied having videotaped her. *Id*. On appeal, this court concluded that the evidence supported a reasonable inference that the defendant knew that he did not have the victim's consent to videotape the sexual encounter at the time that he did so, and, thus, that he knowingly

7

committed voyeurism by videotaping the victim in a clandestine manner in an area where she was likely to disrobe. *Id*. Thus, the defendant's voyeurism conviction was not disturbed. *Id*.

In the instant matter, the alleged facts, if proven to be true at trial, can constitute voyeurism because Wallace recorded A.J. disrobing and engaging in a sexual encounter without her consent in a clandestine, surreptitious, prying, or secretive nature. The alleged facts indicate that Wallace started the camera before A.J. entered the room and left it running until after the sexual encounter was over. A.J. was not aware that Wallace was recording the encounter and did not consent to him doing so. Upon learning that Wallace had recorded the encounter, A.J. asked to see the recording. Wallace initially denied having recorded the sexual encounter before assuring A.J. that the recording had been destroyed. Wallace also attempted to conceal the recording from investigating officers who were searching his home during their investigation into A.J.'s complaint. We conclude that these facts, again if proven to be true, could lead to a reasonable inference that Wallace knew that he did not have A.J.'s consent at the time that he recorded her, and, thus, that he knowingly recorded her in a clandestine or secretive manner in an area where she was likely to disrobe.

Furthermore, to the extent that Wallace claims that A.J. implicitly consented to his recording the sexual encounter because she consented to the encounter itself, we are unpersuaded by Wallace's claim because we believe that one may consent to engaging in a sexual encounter without consenting to the encounter being recorded. Thus, we conclude that it is immaterial that A.J. consented to the sexual encounter if she did not consent to Wallace's recording of the encounter. Wallace's act of secretly recording the sexual

8

encounter could reasonably be found to be peeping, or looking in a clandestine, surreptitious, prying, or secretive nature. Thus, we conclude that the trial court acted within its discretion in denying Wallace's motion to dismiss because the alleged facts, if ultimately proven to be true, could support a conviction for Class D felony voyeurism.

The judgment of the trial court is affirmed.

KIRSCH, J., concurs.

BARNES, J., concurs with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIAM R. WALLACE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 26A01-1101-CR-9 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**BARNES, Judge, concurring**

I concur in this case, albeit reluctantly because of the wording of the voyeurism statute and the application we are obliged to make here. Make no mistake, Wallace's alleged conduct was hardly chivalrous, and he defines the word cad. Ultimately, I think he could properly be found guilty of Class D felony voyeurism if the facts alleged here are proven true. However, the voyeurism statute was drawn primarily to punish persons who peep into bathrooms, locker rooms, dressing rooms, and the like.

If the allegations here are true, there is no doubt that A.J. was filmed without her knowledge. It is also true she consensually engaged in sex with Wallace and knew what she

10

was doing. She necessarily consented to Wallace seeing her naked. She made a barter choice, and I do not think she is a typical "victim" envisaged by this statute. As the majority acknowledges, it seems Wallace did not peep upon A.J. or commit Class B misdemeanor voyeurism when he saw A.J. naked while having consensual sex. Wallace was charged with the greater Class D felony voyeurism offense, and normally if one does not commit a lesser included offense, he or she cannot be convicted of the greater offense. See Simmons v. State, 793 N.E.2d 321, 325 (Ind. Ct. App. 2003).

The camera that Wallace set up, however, did peep. Although a camera by itself cannot commit a crime, the recording it made permitted Wallace to repeatedly view A.J. naked and engaging in sex with him. A.J. did not consent to being seen naked repeatedly by Wallace. She also certainly did not consent to her private act of sexual intercourse with Wallace being shown to her boyfriend, or to whomever Wallace might choose to show it. The alleged facts here are that A.J. was filmed without her knowledge and/or consent, and so I believe there was a "peeping" within the meaning of the voyeurism statute because it was a "looking of a clandestine, surreptitious, prying, or secretive nature." Ind. Code § 35-45-4-5(a)(2). Thus, I vote to affirm the trial court's denial of Wallace's motion to dismiss.

11