OPINION OF THE COURT
Stein, J.
This case, apparently one of first impression, involves the application of New York’s unlawful surveillance statute (see Penal Law § 250.45) to the prosecution of a defendant accused of video recording his sexual activities without the knowledge or consent of the other participants.
In the fall of 2009, defendant and victim A, both college students attending the same university, began dating. In March 2010, defendant used his digital camera to secretly record victim A performing oral sex on him while they were in the bedroom of *171 his apartment. Defendant and victim A broke up in August 2010 and, although their relationship became strained, they continued to have contact with one another following their return to school that fall. In September 2010, defendant informed victim A — through a series of Facebook messages— that he possessed the March video; he described the video’s content and insinuated that he was going to upload it to a website and identify victim A by name. According to victim A, she was distraught over the messages and asked defendant to delete the video.
Thereafter, on December 6, 2010, victim A went to defendant’s apartment to discuss their relationship. Victim A claimed that defendant became irate, started berating her and ultimately threatened to disseminate the video and humiliate her unless she agreed to have one final sexual encounter with him while he recorded it. Victim A initially refused, but eventually acceded to defendant’s demands and accompanied him into his bedroom. While there, defendant began recording victim A and disrobed her. Ultimately, victim A refused to have sexual intercourse with defendant, but instead acquiesced to defendant video recording her while she performed oral sex on him.
After leaving defendant’s apartment, victim A disclosed the incident to her roommate and reported it to campus security and to the local police. The police subsequently obtained and executed a warrant to search defendant’s apartment and retrieved a small digital camera, an iPod, an external hard drive and a laptop computer. A search of defendant’s laptop revealed multiple video files, including videos of the March 2010 and December 2010 sexual encounters between victim A and defendant. A third file was also found, which consisted of a video of defendant having sex with victim B. After learning the identity of victim B, a police investigator contacted her and she confirmed that she had a sexual encounter with defendant in November 2010, but denied knowing that he had recorded it.
As a result of these incidents, defendant was charged, in two separate indictments, with various crimes relating to the recordings. In the first indictment, arising out of the March and December 2010 incidents involving victim A, defendant was charged with unlawful surveillance in the second degree (two counts), criminal sexual act in the third degree, coercion in the second degree (two counts) and unlawful imprisonment in the second degree. In the second indictment, in relation to the November 2010 recording of victim B, defendant was charged *172 with three counts of unlawful surveillance in the second degree. Before trial, County Court dismissed the charge of criminal sexual act in the third degree and the first count of unlawful surveillance with respect to victim A and, as relevant here, granted a motion by the People to consolidate the indictments for trial, over defendant’s objection.
Following a jury trial, defendant was acquitted of the charge of unlawful imprisonment and was convicted of the remaining charges. He was subsequently sentenced to a prison term of 1 to 3 years on the unlawful surveillance conviction relating to victim A, concurrent nine-month sentences on the two coercion convictions, and three concurrent one-year sentences for the unlawful surveillance convictions relating to victim B.[1] County Court also issued an order of protection for both victims, directed defendant to pay restitution and certified defendant as a sex offender. Defendant now appeals, advancing a constitutional challenge to the unlawful surveillance statute (see Penal Law § 250.45), as well as claims relating to (1) the legal sufficiency of his conviction of the four counts of unlawful surveillance, (2) County Court’s consolidation of the two indictments for trial, (3) the integrity of the grand jury proceeding with respect to victim A, (4) various evidentiary rulings made at trial, (5) County Court’s determination that defendant should be designated a sex offender, and (6) the severity of his sentence. For the reasons that follow, we now affirm.
Initially, defendant argues that the unlawful surveillance statute does not apply to his conduct at issue here. In 2003, the Legislature created the crime of unlawful surveillance in the second degree (see L 2003, ch 69, § 3), as part of a group of laws criminalizing video voyeurism (see William C. Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 250.40). As relevant here:
“A person is guilty of unlawful surveillance in the second degree when:
“1. For his or her own, or another person’s amusement, entertainment, or profit, or for the purpose of degrading or abusing a person, he or she intentionally uses or installs ... an imaging device to sur *173 reptitiously view, broadcast or record a person dressing or undressing or the sexual or other intimate parts of such person at a place and time when such person has a reasonable expectation of privacy, without such person’s knowledge or consent; or
“2. For his or her own, or another person’s sexual arousal or sexual gratification, he or she intentionally uses or installs ... an imaging device to surreptitiously view, broadcast or record a person dressing or undressing or the sexual or other intimate parts of such person at a place and time when such person has a reasonable expectation of privacy, without such person’s knowledge or consent; or
“3. (a) For no legitimate purpose, he or she intentionally uses or installs ... an imaging device to surreptitiously view, broadcast or record a person in a bedroom, changing room, fitting room, restroom, toilet, bathroom, washroom, shower or any room assigned to guests or patrons in a motel, hotel or inn, without such person’s knowledge or consent” (Penal Law § 250.45 [1], [2], [3] [a]).[2]
We are unpersuaded by defendant’s argument that the statute does not apply to the video recording of consensual sexual activity by one of the parties involved in that activity — even if the recording is done without the knowledge or consent of the other party — and that the statute, instead, was intended to cover only the actions of a “Peeping Tom.”
There is nothing in the plain language of the statute that would preclude its application to the surreptitious recording of a consensual sexual encounter by one of the participants (see generally People v Varughese, 21 AD3d 1126, 1127 [2005], lvs denied 6 NY3d 782 [2006]). In fact, the statute’s legislative history supports the conclusion that the Legislature intended its application to defendant’s conduct (see generally People v Kozlow, 8 NY3d 554, 559-560 [2007]). A memorandum in support of the legislation described examples of various circumstances that necessitated the enactment of this law, one of them being that
“[w]omen throughout. . . New York State have un *174 knowingly been videotaped while engaging in sexual relations. Several women in this category have attempted to file complaints alleging that their partner made these videotapes without their knowledge or permission and are now showing them to friends and others, and even posting the video footage on the Internet. These women were turned away without a remedy” (L 2003, ch 69, Governor’s Program Bill Mem No. 12, 2003 NY Legis Ann at 54).
Therefore, defendant’s claim that the unlawful surveillance statute does not encompass his crime is unavailing.
Defendant next asserts a constitutional challenge to the statute, arguing that it is too vague as applied to him. Initially, we note that “legislative enactments carry a strong presumption of constitutionality” (People v Stuart, 100 NY2d 412, 422 [2003]; see People v Jenner, 39 AD3d 1083,1085 [2007], lv denied 9 NY3d 845 [2007]). “[A]n as-applied challenge calls on the court to consider whether a statute can be constitutionally applied to the defendant under the facts of the case” (People v Stuart, 100 NY2d at 421). “[A] ‘statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law’ ” (id. at 419, quoting Connally v General Constr. Co., 269 US 385, 391 [1926]). A two-part test is used to determine whether a statute is unconstitutionally vague; first, “the court must determine whether the statute in question is sufficiently definite to give a person of ordinary intelligence fair notice that his [or her] contemplated conduct is forbidden by the statute” and, “[s]econd, the court must determine whether the enactment provides officials with clear standards for enforcement” (People v Stuart, 100 NY2d at 420 [internal quotation marks and citations omitted]).
Here, defendant first challenges the element of surreptitiousness, arguing that it cannot be established in this case because the camera was in plain view and both victims were aware of defendant’s presence in the room. We disagree. By its terms, the statute prohibits the use of a device to surreptitiously record, without limitation as to the location of the device (see Penal Law § 250.45 [1], [2], [3] [a]). The term “surreptitious” connotes a secretive act and is defined as “obtained, done, made, etc., by stealth; secret or unauthorized; clandestine[;] . . . act *175 ing in a stealthy way” (Dictionary.com [Dictionary.com Unabridged, Random House, Inc.]). We discern nothing in the plain language of the statute that restricts its application to circumstances in which a defendant “spies” on the victim from another location while the victim is being recorded. Thus, in this case, the fact that both defendant and the camera were visible in defendant’s room is immaterial, as defendant was using the camera in a surreptitious manner.[3] In our view, inasmuch as the statute merely requires that the recording be surreptitious, it provided fair notice to defendant that his actions were prohibited (see generally Chiszar v State, 936 NE2d 816, 823-824 [Ind Ct App 2010], transfer denied 950 NE2d 1212 [Ind Sup Ct 2011]).
Nor do we find merit to defendant’s argument that the People’s interpretation of the element of surreptitiousness impermissibly renders superfluous the requirement that the recording be without a victim’s knowledge or consent. Indeed, a penal statute may not be interpreted in such a way that “words which define or delimit the reach of statutory provisions [are] disregarded as superfluous” (People v Hedgeman, 70 NY2d 533, 539 [1987]; see McKinney’s Statutes §§ 231, 271 [b]; accord People v Dewall, 15 AD3d 498, 500 [2005], lv denied 5 NY3d 787 [2005]). Here, however, the interpretation of the statute advanced by the People as applied to the evidence supporting defendant’s convictions does not do so.
In addition to establishing that neither victim A nor victim B was aware of or consented to defendant recording them while having sex, the People also tendered proof of actions by defendant demonstrating that he used the camera surreptitiously. The video of victim B shows that defendant began to record and position the camera on his desk while victim B was outside his bedroom. Similarly, the March 2010 video of victim A shows that defendant turned the camera on while victim A was performing oral sex and had her eyes closed. Defendant did not call the victims’ attention to the camera or to the fact that he was recording them. This evidence, which establishes the element of surreptitiousness, can be distinguished from the evidence that proves the victims’ lack of knowledge or consent and gives it independent meaning and effect (see People v Hedge *176 man, 70 NY2d at 538-539). Considering that the legislative history confirms that the statute was designed to proscribe this type of conduct (see id. at 539), we do not find any element to be superfluous.
We also reject defendant’s argument that the phrase “reasonable expectation of privacy” is impermissibly vague (Penal Law § 250.45 [1], [2]; see People v Stuart, 100 NY2d at 420-421; People v Riddick, 34 AD3d 923, 925 [2006], lv denied 9 NY3d 868 [2007]).[4] For purposes of Penal Law § 250.45 (1) and (2)— which prohibit the surreptitious use of a device to record an individual at “a place and time when such person has a reasonable expectation of privacy” — such phrase is defined as encompassing circumstances in which “a reasonable person would believe that he or she could fully disrobe in privacy” (Penal Law § 250.40 [l]).[5] When a person knowingly undresses and engages in sexual relations with another person, he or she should be able to do so with the reasonable expectation that his or her actions are limited to that particular time and place and that his or her naked body and/or sexual acts will not be memorialized and/or repeatedly viewed at any time by the other person present or by anyone else with whom that person decides to share the recordings (see Wallace v State, 961 NE2d 529, 533 [Ind Ct App 2012]; Lewis v LeGrow, 258 Mich App 175, 188-189, 670 NW2d 675, 685-686 [2003]). Stated another way, “reasonable people expect to be safe from casual or hostile intrusion[ ] within a bedroom” and, when “engaged in sexual relations in a bedroom of a private home[,] expect to be free from surveillance” (Lewis v LeGrow, 258 Mich App at 188, 670 NW2d at 685 [internal quotation marks and citations omitted]). It is of no moment that the unwanted intrusion came from the person with whom the victim engaged in sex.
*177 Here, victim B testified that she believed she was engaging in a private sexual act with a person she trusted and, had she been asked, she would not have agreed to be videotaped while engaging in such act. In our view, the privacy element, when “[considered in light of the clear and understandable elements of the criminal conduct,” gave defendant “adequate notice and law enforcement authorities sufficient guidance” (People v Stuart, 100 NY2d at 428 [internal quotation marks and citation omitted]; see generally Chiszar v State, 936 NE2d at 823-824), and we therefore reject defendant’s vagueness challenge in this regard.
We reach the same conclusion with respect to defendant’s final constitutional argument that the phrase “no legitimate purpose” is unconstitutionally vague because it is not defined in the statute (Penal Law § 250.45 [3] [a]). We note that this subdivision has withstood a constitutional challenge before the Second Department (see People v Pacienza, 91 AD3d 672, 673 [2012], lv denied 18 NY3d 961 [2012]). Further, the Court of Appeals has twice rejected vagueness challenges to the same or similar language in other criminal statutes, because an “ordinary understanding of the phrase . . . means the absence of a reason or justification” (People v Stuart, 100 NY2d at 428 [anti-stalking statute upheld]; see People v Shack, 86 NY2d 529, 538 [1995] [rejected constitutional challenge to aggravated harassment statute]). Here, the statute prohibits surreptitious recording for purposes generally involving personal gain, for harmful reasons and for salacious and lewd purposes (see Penal Law § 250.45 [1], [2]). Where recordings occur in certain places, including bedrooms, it is presumed that there is no legitimate purpose (see Penal Law § 250.45 [3] [b]). Upon our review of the statute in its entirety and considering the common understanding of the phrase “no legitimate purpose,” we conclude that defendant received adequate notice that his surreptitious recording of the victims while they were engaged in a sexual act was unlawful (see People v Pacienza, 91 AD3d at 673) and that the statute provided clear standards for enforcement (see People v Stuart, 100 NY2d at 428). Accordingly, defendant failed to overcome the strong presumption that the statute is valid (see id. at 422; People v Jenner, 39 AD3d at 1085).
We turn next to defendant’s challenge to the legal sufficiency of his convictions of unlawful surveillance in the second degree. With respect to both victims, the People were required to establish that defendant, for no legitimate purpose, intention *178 ally used his camera to surreptitiously record them in his bedroom without their knowledge or consent (see Penal Law § 250.45 [3] [a]). In addition, as to victim B, the People were required to prove that defendant intentionally used his camera to surreptitiously record the sexual or other intimate parts of her body at a place and time when she had a reasonable expectation of privacy, without her knowledge or consent, and that he did so for his own amusement, entertainment or profit (see Penal Law § 250.45 [1]) and for his own sexual arousal or sexual gratification (see Penal Law § 250.45 [2]). As defendant concedes, his argument that the People failed to establish that the recording was surreptitious was not preserved by asserting that ground in his trial motion to dismiss (see People v Ingram, 95 AD3d 1376, 1376 n 1 [2012], lv denied 19 NY3d 974 [2012]). In any event, were we to address that claim, we would find it to be without merit (see People v Schreier, 96 AD3d 1453, 1454 [2012], lv granted 19 NY3d 1105 [2012]; People v Pacienza, 91 AD3d at 673).[6]
Defendant did preserve his challenge to the legal sufficiency of the evidence with respect to the element of “reasonable expectation of privacy,” which relates to the first two counts regarding victim B (Penal Law § 250.45 [1], [2]).[7] As previously noted, we reject defendant’s argument that there can be no reasonable expectation of privacy in an activity in which a person knowingly exposes himself or herself to another person. The evidence at trial, in particular the victim’s testimony and the video itself, demonstrates that victim B was concerned about her privacy, notwithstanding the fact that she was naked in defendant’s presence. Defendant and victim B were having sex behind closed doors in defendant’s bedroom and victim B testified that she was not aware that she was being recorded and would not have consented thereto. She never acknowledged the camera or suggested in any way that, by being naked in defendant’s presence, she was forgoing her privacy and giving defend *179 ant permission to capture images of her naked body for his future use. Viewing this evidence in a light most favorable to the People, we conclude that there is a valid line of reasoning and permissible inferences from which a rational jury could have found beyond a reasonable doubt (see People v Brown, 17 NY3d 863, 865 [2011]; People v Hatchcock, 96 AD3d 1082, 1083 [2012], lv denied 19 NY3d 997 [2012]) that victim B had a reasonable expectation of privacy during her sexual encounter with defendant.
Defendant’s challenge to the legal sufficiency of the evidence that he lacked a legitimate purpose for recording the victims without their knowledge or consent (see Penal Law § 250.45 [3] [a]) is also unavailing. Notably, because the recording was made in defendant’s bedroom, the statute establishes a rebuttable presumption that it was made with no legitimate purpose (see Penal Law § 250.45 [3] [b]; People v Pacienza, 91 AD3d at 673; People v Evans, 27 AD3d 905, 906 [2006], lv denied 6 NY3d 847 [2006]). Defendant’s stated purpose of recording the victims without their knowledge and consent was for his later sexual gratification and arousal. Even assuming that the statute would permit a finding that such purpose is legitimate— which, in our view, it does not (see Penal Law § 250.45 [1], [2])— there was evidence at trial that could support a finding that defendant had a more nefarious purpose. For example, defendant’s Facebook messages to victim A informing her of the March 2010 video implied that he would upload it to the Internet and stated, in part, that the video “was a fun little side project of mine since I could tell you were preparing to f . . . me over royally and I wanted something hilarious to hold over your head.” Further, defendant did more than merely record victim A and later watch the video for his sexual gratification; he also created an edited video with a title that included the victim’s name and included still photographs of victim A wearing only undergarments. Such proof, together with the statutory presumption, provides legally sufficient evidence to support the determination that defendant did not have a legitimate purpose for surreptitiously recording the victims without their knowledge or consent (see generally Matter of Clifton NN., 64 AD3d 903, 905 [2009]).
Defendant was not deprived of a fair trial by consolidation of the two indictments. “When evidence of a crime charged in one indictment is material and admissible as evidence of a crime charged in a second, the two indictments may be joined in the trial court’s discretion” (People v Shoga, 89 AD3d 1225, 1229 *180 [2011], lv denied 18 NY3d 886 [2012] [citation omitted]; see CPL 200.20 [2] [b]; [4]). “Notably, evidence may be deemed material and admissible within the meaning of CPL 200.20 (2) (b) if such proof would be admissible under any of the recognized Molineux exceptions” (People v Raucci, 109 AD3d 109, 117 [2013] [internal citations omitted]; see People v Rodney, 79 AD3d 1363, 1364 [2010], lv denied 19 NY3d 1105 [2012]; People v Carter, 74 AD3d 1375, 1378 [2010], lv denied 15 NY3d 772 [2010]; People v Rodriguez, 68 AD3d 1351, 1353 [2009], lv denied 14 NY3d 804 [2010]). Whether consolidation is appropriate is left to the sound discretion of the trial court (see People v Lane, 56 NY2d 1, 8 [1982]; see also CPL 200.20 [4], [5]).
Here, County Court correctly found that the offenses in the two indictments were joinable because proof regarding the events alleged in each of the indictments was relevant to, among other things, the issues of defendant’s intent and common plan and scheme (see CPL 200.20 [2] [b]). While defendant admitted that he intended to record the victims, he disputed the People’s claim that he intended to surreptitiously record them without their knowledge or consent. In this regard, the March 2010 video recording of victim A and the Facebook messages, which indicate that she was unaware that she was being recorded, were relevant to prove that defendant intended to surreptitiously record victim B, and vice versa. Moreover, the recordings of victim A and victim B tended to show that defendant maintained a camera on the desk in his bedroom, which he would turn on during sexual activity with the victims, suggesting a common plan to secretly record women with whom he had sexual encounters, so that he could later use the videos for illegitimate purposes. In determining whether to consolidate the indictments for trial, County Court properly balanced the probative value of the evidence against the potential for prejudice[8] and, at trial, instructed the jury that it should separately consider the evidence as to each victim. Under the circumstances, we discern no abuse of discretion in County Court’s decision to consolidate the indictments (see People v Shoga, 89 AD3d at 1229; People v Thomas, 73 AD3d 1223, 1225 [2010], lv dismissed 15 NY3d 779 [2010]; People v Torra, 309 AD2d 1074, 1075 [2003], lv denied 1 NY3d 581 [2003]).
We turn next to defendant’s assertion that the integrity of the grand jury proceeding was impaired. We agree with de *181 fendant that Investigator Anthony Martino — a forensics computer expert with the City of Utica Police Department who performed the search of defendant’s laptop and compiled the videos contained thereon — should not have been present in the grand jury room after he completed his testimony and while victim A was testifying[9] (see People v Sayavong, 83 NY2d 702, 707 [1994]; People v Minet, 296 NY 315 [1947]; see also CPL 190.25 [3]). Nonetheless, Martino was asked by the People to remain in the grand jury room after completing his testimony in order to assist “as a technician” during the testimony of victim A, specifically to play video clips for the grand jurors. At the time that victim A testified, Martino’s testimony was complete and, significantly, his testimony, both during the grand jury proceeding and at trial, related to his role as a forensics computer expert and did not touch on any areas about which victim A testified. In addition, there is no indication that Martino and victim A worked together during the investigation. Accordingly, we are unpersuaded that the integrity of the grand jury proceeding was impaired or that Martino’s presence during victim A’s testimony led to the possibility of prejudice to defendant (see People v Darby, 75 NY2d 449, 455 [1990]; People v Sutherland, 104 AD3d 1064, 1066 [2013]; People v Reome, 309 AD2d 1067, 1067-1068 [2003], lv denied 2 NY3d 805 [2004]; People v Hyde, 85 AD2d 745, 746 [1981]; People v Wilson, 77 AD2d 713, 713-714 [1980]; People v De Ruggiero, 96 Misc 2d 458, 461 [1978], affd 77 AD2d 821 [1980]; see also CPL 210.20 [1] [c]; 210.35 [5]; compare People v Sayavong, 83 NY2d at 710-711).
Defendant’s assertion that his sentence was excessive or imposed as a punishment for the exercise of his right to a trial is likewise lacking in merit. The sentencing minutes reflect that County Court gave careful consideration to, among other things, statements from the People, the victims and defendant’s counsel, as well as “heartfelt letters” from defendant’s father and sister. The court also noted defendant’s academic and personal accomplishments, and the fact that he had no prior criminal history, and reviewed information concerning his medical condition. Nonetheless, in concluding that a term of imprisonment was warranted, the court found that there was a “gaping hole in [defendant’s] character” and gave appropriate weight to the devastating and profound effect of defendant’s ac *182 tions upon the victims (see People v Monteiro, 93 AD3d 898, 900 [2012], lv denied 19 NY3d 964 [2012]; People v Sapienza, 91 AD3d 988, 989 [2012]).[10] Upon our review of the record, we discern no abuse of discretion or extraordinary circumstances that would warrant a reduction of the sentence in the interest of justice (see People v Estella, 107 AD3d 1029, 1033 [2013], lv denied 21 NY3d 1042 [2013]; People v Kendall, 91 AD3d 1191, 1193 [2012]; People v Houghtaling, 82 AD3d 1493, 1494 [2011], lv denied 17 NY3d 806 [2011]).[11]
Defendant’s challenge to County Court’s decision to certify him as a sex offender is also without merit. Under the Sex Offender Registration Act (see Correction Law § 168 et seq.), and as relevant here, a conviction under Penal Law § 250.45 (2) or (3) is included as a sex offense “unless upon motion by the defendant, the trial court, having regard to the nature and circumstances of the crime and to the history and character of the defendant, is of the opinion that registration would be unduly harsh and inappropriate” (Correction Law § 168-a [2] [e]). We disagree with defendant’s claim that his conduct constituted a crime against the right of privacy (see Penal Law art 250), as opposed to a sex offense (see Penal Law art 130), and was not of a sexual nature. Notwithstanding one expert’s opinion that defendant posed a low risk to reoffend, given the nature and circumstances of his crimes — involving the repeated surreptitious recording of women engaging in sexual acts and the use of coercion to convince one of those women to perform additional sexual acts — we cannot conclude that the requirement that defendant register as a sex offender is unduly harsh and inappropriate (see People v Magliocco, 101 AD3d 1724, 1724 [2012]; People v Allen, 64 AD3d 1190, 1191 [2009], lv denied 13 NY3d 794 [2009]).
To the extent not specifically addressed herein, defendant’s remaining contentions, including his challenge to a variety of *183 evidentiary rulings at trial, have been examined and found to be meritless.
Rose, J.E, Lahtinen and McCarthy, JJ., concur.
Ordered that the judgment is affirmed.

. The sentences imposed on the two coercion convictions pertaining to victim A and three unlawful surveillance convictions pertaining to victim B were consecutive to the sentence imposed upon the unlawful surveillance conviction relating to victim A.

. Defendant was convicted of unlawful surveillance under Penal Law § 250.45 (3) with respect to victim A, and under all three subdivisions with respect to victim B (see Penal Law § 250.45 [1], [2], [3] [a]).

. It appears from the video of victim B that defendant may have attempted to conceal the camera with other objects on the desk. It is also apparent from viewing the March 2010 video of victim A, as well as the video of victim B, that the victims were either out of the room or had their eyes closed when defendant began to operate the camera.

. Inasmuch as defendant was only convicted of unlawful surveillance under Penal Law § 250.45 (3) (a) with respect to victim A, this argument is only applicable to victim B.

. Given the distinctly different purpose of analyzing privacy interests in a 4th Amendment context — that is, to determine when a government intrusion is justified which, in turn, requires a balancing of an individual’s rights against society’s interest in law enforcement — as opposed to the purpose of analyzing privacy interests in circumstances described by the statute here — where the offender does not have a legitimate expectation of capturing images of nudity — we do not feel constrained to follow 4th Amendment jurisprudence, as urged by defendant (see People v Stone, 463 Mich 558, 564, 621 NW2d 702, 705 [2001]; Lewis v LeGrow, 258 Mich App 175, 187-188, 670 NW2d 675, 684-685 [2003]).

. We summarily reject defendant’s related argument that New York’s one-party consent rule applicable to, among other things, eavesdropping and audio recording (see Penal Law § 250.00 [1], [2], [6]; GPL 700.05 [9]) also applies to the unlawful surveillance statute. The plain language of Penal Law § 250.45 — criminalizing the recording of an individual “without such person’s knowledge or consent” — renders the one-party consent rule inapplicable.

. However, defendant did not preserve his challenge to County Court’s jury charge regarding the element of reasonable expectation of privacy by an objection to the charge as given (see GPL 470.05 [2]; People v Houck, 101 AD3d 1239, 1240 [2012]), and we decline to exercise our interest of justice jurisdiction with respect thereto.

. Notably, County Court also evaluated and denied defendant’s subsequent motion to reconsider the consolidation order.

. County Court denied defendant’s motion to dismiss the indictment on this ground.

. Notably, defendant received the minimum indeterminate sentence permissible for a conviction of unlawful surveillance in the second degree, a class E felony (see Penal Law § 70.00).

. We agree with defendant, and the People concede, that “[b]y operation of law, defendant’s definite sentences here merged with and are satisfied by his service of [the] indeterminate sentences” (People v Weber, 40 AD3d 1267, 1268-1269 [2007], lv denied 9 NY3d 927 [2007]; see Penal Law § 70.35; People v Tortorice, 175 AD2d 625, 625 [1991], lv denied 78 NY2d 1130 [1991]). Nonetheless, no action by this Court is necessary, as the Department of Corrections and Community Supervision is required to calculate the period of incarceration in accordance with Penal Law § 70.35 (see People v Weber, 40 AD3d at 1268-1269; People v Tortorice, 175 AD2d at 625).