

FILED

Mar 11 2019, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Larry Warren<br>Pendleton, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Angela Sanchez<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry Warren,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 11, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1725<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Clark Rogers, Judge<br><br>The Honorable David Hooper, Magistrate<br><br>Trial Court Cause No.<br>49F25-1001-FA-1153 |

**Tavitas, Judge.**

# Case Summary

Larry Warren appeals the trial court's partial denial of his motion for return of property. We reverse and remand.[1]

# Issue

Warren raises one issue, which we restate as whether the trial court properly denied Warren's motion for return of property that contained depictions of sexual conduct.

# Facts

In 2010, Warren was charged with multiple counts of child molesting, Class A felonies; sexual misconduct with a minor, Class B felonies; and child solicitation, Class D felonies. Search warrants were executed on Warren's residence and his mother's residence, and property was seized as a result. In December 2012, Warren was found guilty of three counts of child molesting, Class A felonies, and two counts of child solicitation, Class D felonies. The trial court sentenced Warren to an aggregate sentence of eighty years in the Department of Correction. On appeal, we remanded for resentencing based on a violation of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). *See*

---

[1] In a footnote in his reply brief, Warren contends that he "contemporaneously filed a Motion to Strike in this matter, seeking to strike the State's Appellee's Brief . . . ." Appellant's Reply Br. p. 16 n.1. We find no such motion in our records; consequently, we do not address the issue further.

*Warren v. State*, No. 49A04-1301-CR-25 (Ind. Ct. App. Oct. 8, 2013). The trial court resentenced Warren to an aggregate sentence of seventy years.

[4] On March 1, 2017, Warren filed a petition for return of his seized property not used in the prosecution of his crimes, which included hundreds of items, including photographs and video recordings. The State did not object to the release of electronic devices. The State, however, objected to the release of "any tapes, recordings, film or digital and photos" because the items contained "a wealth of sexual images that seem[] to involve private sexual conduct probably confidential between unnamed individuals other than [Warren]," and the State had no indication that "said individuals consent to dissemination of their images to [Warren], his mother, or any other 3rd party." Appellant's App. Vol. II p. 33. On March 7, 2017, the trial court granted Warren's request to release the electronic devices but denied the request to release "tapes, films, digital, or photographic images or other recordings in that these items contain[] sexual-images that seem to involve private sexual conduct between un-named and un-identifiable persons and the State has no indication that the individuals depicted give their consent to dessiminate [sic] these items." *Id.* at 35.

[5] Warren filed a motion to correct error. Warren alleged that: (1) some of the photographs and recordings are from his childhood, family events, Hurricane Katrina, Afghanistan, and Iraq; (2) other photographs and recordings were from his work for RWG (Real Wild Girls) Media and were taken in public places or consent was given; and (3) none of the items related to his child molesting conviction. The trial court granted Warren's motion to correct error

in part. In general, the trial court directed the State to release all of the property to Warren or his agent except for videos and other images containing sexual or pornographic materials. The trial court noted: "Should the State elect not to release these types of material [sic], the Defendant may petition this court for further proceedings." *Id.* at 89.

[6] Warren then filed a motion to reconsider and argued that the State had failed to rebut Warren's lawful ownership of the images and videos and the State's "hunch" that the images were "non-consensual and illegal" was insufficient. *Id.* at 93. Warren listed hundreds of video tapes, DVDs, CDs, and photographs that were retained by the State. The trial court denied the motion to reconsider.

[7] On September 15, 2017, Warren filed a motion for rule to show cause and argued that the State had failed to return his firearms. Warren also filed a second motion for return of property regarding the remainder of his property. Warren alleged that all of the recordings and photographs were provided to him or recorded by him "with full and explicit written and oral consent of the persons of whom whose [sic] likeness appears therein." *Id.* at 135. According to Warren, due to the seizure of the materials, he was "suffering irreparable injury" because he was "unable to sell such on the open market." *Id.* at 136.

[8] The trial court held a hearing to address Warren's motions. At the hearing, Warren stated that the recordings at issue were about six hundred hours long. The deputy prosecutor stated that she had previously been required to watch the videos, which were not well labeled, and that: "What I recall was I watching a

magic show and then from the magic show it broke to two people having intercourse and then it went back to a magic show. That was, that is the one that is most distinct in my head." Tr. Vol. II p. 8. Warren argued that some of the recordings were from Hurricane Katrina, spring breaks, Mardi Gras, and biker events that he recorded and that he was the "rightful owner" of the recordings. *Id.* at 7.

[9] On December 14, 2017, the trial court entered an order requiring the State to release Warren's weapons, family photos, military medals, and family mementos. Regarding the other recordings and photos, the trial court denied Warren's motion as follows:

> Any CD'S, DVD's, Diskettes, tapes or other recordings (collectively referred to herein as "videos") shall not be returned as the Court cannot tell what Mr. Warren (as a sex offender) can legally possess and what he can't. Further, even if Mr. Warren doesn't want to "possess" the videos (he is serving a lengthy prison sentence) and he just wants to sell them using a third party, the Court cannot tell which videos are innocuous (such as videos of Hurricane Katrina) and which are filmed under questionable consensual circumstances.

Appellant's App. p. 179. Warren filed a motion to correct error, which the trial court denied.

[10] On April 16, 2018, Warren filed a third motion for return of his property. The trial court denied the motion. The trial court noted that it had previously ruled on the motion and that it had informed Warren to pursue an appeal but he had

not done so.  On June 19, 2018, Warren filed a petition for permission to file a belated notice of appeal, which the trial court granted.

## Analysis

[11]  Warren appeals the trial court's partial denial of his motion for return of property.  When we review the denial of a motion for return of property, we will affirm unless the decision is clearly erroneous and cannot be sustained on any legal theory supported by the evidence.  *Williams v. State*, 952 N.E.2d 317, 319 (Ind. Ct. App. 2011).  "Statutes that relate to search and seizure must be strictly construed 'in favor of the constitutional right of the people.'"  *Id.* (quoting *Wallace v. State*, 199 Ind. 317, 327, 157 N.E. 657, 660 (1927)).  "The court, once its need for the property has terminated, has both the jurisdiction and the duty to return seized property."  *Id.*

[12]  The return of property following the final disposition of a criminal cause is governed by Indiana Code Section 35-33-5-5, which provides in relevant part: "Property which may be lawfully possessed shall be returned to its rightful owner, if known.  If ownership is unknown, a reasonable attempt shall be made by the law enforcement agency holding the property to ascertain ownership of the property."  Thus, the issue before us is whether Warren is the "rightful owner" of the recordings and photographs and whether Warren can "lawfully possess" the materials.  *See Merlington v. State*, 839 N.E.2d 260, 263 (Ind. Ct. App. 2005) (noting that "the question is whether the cash is 'property which may be lawfully possessed.'  If so, then it 'shall be returned to its rightful owner,

if known'"). If Warren is the rightful owner of the materials and can lawfully possess the materials, the trial court "shall" return the property. Ind. Code § 35-33-5-5. Warren must demonstrate his claim by a preponderance of the evidence. *Tracy v. State*, 655 N.E.2d 1232, 1236 (Ind. Ct. App. 1995), *trans. denied*.

[13] The parties do not seem to dispute that Warren is the rightful owner of the materials.[2] The question remains, however, whether the materials are property that may lawfully be possessed. Although our court has considered whether other items may be lawfully possessed, *see Matter of Prop. Located at Marriott Inn, 505 Marriott Drive, Clarksville, Ind.*, 456 N.E.2d 444, 448 (Ind. Ct. App. 1983) (holding that a gambling device could not be lawfully possessed and that the petitioner was not entitled to return of the seized device), we find no Indiana cases addressing a factually similar circumstance.

[14] The trial court found that Warren could not lawfully possess the materials due to his status as a sex offender and incarceration and due to the "questionable consensual circumstances" found in the materials. Appellant's App. Vol. II p. 179. Warren argues that the materials should be returned to him because the State failed to prove that the materials contain non-consensual and illegal

---

[2] Where the defendant was in possession of the items at the time of his arrest, there is a presumption that the defendant is the owner of the items. *See Merlington*, 839 N.E.2d at 263; *State v. Poxon*, 514 N.E.2d 652, 654 (Ind. Ct. App. 1987), *trans. denied*. The materials at issue here were found during a search of Warren's residence and a search of his mother's residence. Because the parties do not dispute that he is the owner of the materials, we do not address whether a presumption of ownership exists.

activity. The State contends that "[t]here is nothing in this record suggesting, let alone demonstrating, that the participants in the recorded sex acts were aware that they were being recorded, let alone that they consented." Appellee's Br. p. 13. The State argues that the trial court's order is correct "based upon Defendant's inability to lawfully possess this sexually explicit material, and the unlawful dissemination of it by any third parties without consent of the persons appearing in the recordings." *Id.* at 12-13.

[15] The trial court's first basis for denying Warren's motion was that Warren is unable to possess such materials due to his child molesting convictions and current incarceration. Warren, however, designated other persons to take possession of several other items that had been seized, including firearms. Despite Warren's incarceration and status as a sex offender, the materials could have been released to his mother or agent. *See, e.g., Williams v. State*, 952 N.E.2d 317, 320 (Ind. Ct. App. 2011) (holding that, where the defendant could not lawfully possess a firearm due to his prior felony conviction, defendant could transfer ownership of the firearm to his counsel).

[16] Next, the trial court denied Warren's request due to the "questionable consensual circumstances" found in the materials. Appellant's App. Vol. II p. 179. The trial court here issued a blanket order denying Warren's request regarding the "CD'S, DVD's, Diskettes, tapes or other recordings." *Id.* The deputy prosecutor, however, only referenced one video, out of hundreds of videos, and stated: "What I recall was I watching a magic show and then from the magic show it broke to two people having intercourse and then it went back

to a magic show. That was, that is the one that is most distinct in my head."
Tr. Vol. II p. 8. The trial court did not require the parties to catalogue or itemize the materials or specifically identify the materials that were unlawful to possess and those that were innocuous.

[17] We recognize, as the trial court did, the time involved in cataloguing Warren's materials. The State, however, cannot take a person's property, not use the property in a prosecution, and then refuse to return the property because doing so is burdensome. Warren was not charged with any crimes related to these materials, and he is entitled to the return of his property that he can lawfully possess. The trial court's blanket order fails to specifically identify the materials Warren can and cannot lawfully possess.

[18] Although the federal rules and statutes differ from Indiana's statute on this issue, we find the Ninth Circuit Court of Appeals' opinion in *U.S. v. Gladding*, 775 F.3d 1149 (9th Cir. 2014), instructive. The court held:

> The district court may also order alternative measures for returning Gladding's noncontraband files other than forcing the government to pay for segregating the data itself. For example, the district court can require Gladding to pay the costs of segregation by having his expert review the electronic storage devices and copy the noncontraband files to the extent otherwise permitted by law. Indeed, Gladding already had an expert review the storage devices while this appeal was pending. The district court may decide to order the government to provide a printed directory of the electronic storage devices. A directory could assist Gladding in better identifying which files he wants returned or which folders potentially contain noncontraband material. Such a remedy may have the effect of substantially

reducing the government's costs in identifying noncontraband files to return to Gladding. And counsel for Gladding suggested at oral argument that a printed directory would go a long way toward resolving this dispute. We of course do not mean to require the district court to adopt any or all of our suggestions; nor do we mean to preclude the district court from ordering other remedies. In cases such as this, the district court is in the best position to fashion a remedy, "taking into account the time needed to image and search the data and any prejudice to the aggrieved party." Fed.R.Crim.P. 41, Advisory Committee's Note to 2009 Amendment.

*Gladding*, 775 F.3d at 1154 (footnote and internal citation omitted). Similarly, here, the trial court may attempt to fashion a remedy to allow the specific cataloguing of Warren's materials.[3]

[19] We do note that the burden here is on Warren to prove by a preponderance of the evidence that the materials can be lawfully possessed. Of the recordings containing sexually explicit materials, Warren must demonstrate that the materials do not violate the obscenity statutes. *See* Ind. Code Chapter 35-49-3. Warren must also show that the participants in the sexual activity were aware of or consented to the recordings.[4] *See, e.g., Wallace v. State*, 961 N.E.2d 529,

---

[3] We encourage the parties to reach an agreement regarding these materials to save both parties time and effort.

[4] It is also unclear whether the participants consented to the commercial dissemination of the recordings. Various torts are implicated here too but would not make the materials unlawful to possess. For example, the tort invasion of privacy by appropriation of name or likeness is implicated when an individual uses the plaintiff's name or likeness for his own benefit. *See Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859, 869 (Ind. Ct. App. 2013); *see also* Ind. Code § 32-36-1-8 (a) ("A person may not use an aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime or for one hundred (100) years after the date of the personality's death without having obtained previous written

533 (Ind. Ct. App. 2012) (holding that the surreptitious recording of consensual sexual activity could support a conviction for voyeurism).

## Conclusion

[20] The trial court's blanket order regarding the materials is clearly erroneous. We reverse and remand for proceedings consistent with this opinion.

[21] Reversed and remanded.

Baker, J., and May, J., concur.

---

consent from a person specified in section 17 of this chapter."). We express no opinion regarding the application of such tort claims here.